**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| JACKIE LOLLIS, ) | |
| ) | No. 9:19-cv-01089-DCN-MHC |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| ANDREW SAUL, Commissioner of Social ) | |
| Security,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on Magistrate Judge Molly H. Cherry's Report and

Recommendation ("R&R") that the court affirm Commissioner of Social Security

Andrew Saul's ("Commissioner") decision denying claimant Jackie Lollis's ("Lollis")

application for disability insurance benefits ("DIB") under the Social Security Act (the

"Act").  Lollis filed an objection to the R&R.  For the reasons set forth below, the court

adopts the R&R and affirms the Commissioner's decision.

## I.  BACKGROUND

### A.  Procedural History

Lollis applied for disability insurance benefits on June 16, 2008, alleging

disability beginning on April 12, 2008.[2]  The Social Security Administration ("Agency")

denied Lollis's claim both initially and upon reconsideration.  Lollis requested a hearing

before an administrative law judge ("ALJ"), and  ALJ Ivar Avots presided over a hearing

---

[1] Andrew Saul is now the Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is automatically substituted for Nancy A. Berryhill, former Commissioner, as the defendant in this lawsuit.
[2] Initially, Lollis alleged a disability onset date of February 29, 2004, but he later amended this date to April 12, 2008.

held on April 23, 2010.  In a decision issued on July 28, 2010, the ALJ determined that

Lollis was not disabled within the meaning of the Act ("2010 ALJ Decision").  Lollis

appealed to the Appeals Council, which denied further review on May 8, 2012, making

the 2010 ALJ Decision the final decision of the Commissioner.  Seeking review of the

2010 ALJ Decision, Lollis filed his first action in this court on July 5, 2012.  On March

27, 2014, the court reversed the Commissioner's decision because the ALJ did not

sufficiently detail his reasons for assigning "little weight" to the opinion of Lollis's

physician, Dr. Charles F. Wadee ("Dr. Wadee").  See Lollis v. Colvin, 2014 WL

1268681, at *4 (D.S.C. Mar. 26, 2014) ("Lollis I").  The court remanded the case for

further administrative proceedings.  Id.

On November 24, 2014, a second ALJ, Harold Chambers, held a hearing.  ALJ

Chambers denied Lollis's claim for DIB in a decision dated January 8, 2015 ("2015 ALJ

Decision").  Lollis filed his second action, seeking review of the 2015 ALJ Decision, on

July 18, 2016.  On September 18, 2017, the court reversed and remanded a second time,

again because the ALJ "failed to adequately explain and support his findings and

conclusions" regarding the "little weight" assigned to Dr. Wadee's opinions.  See Lollis

v. Berryhill, 2017 WL 4157141, at *4 (D.S.C. Sept. 18, 2017) ("Lollis II").

On February 11, 2019, a third ALJ, Gregory Wilson, determined that Lollis was

not disabled ("2019 ALJ Decision").  Lollis exhausted all administrative remedies, such

that the 2019 ALJ Decision now stands as the Commissioner's final decision.  On April

15, 2019, Lollis filed the instant action challenging the 2019 ALJ Decision.  ECF No. 1,

Compl.  The case was referred to Magistrate Judge Molly H. Cherry pursuant to Local

Civil Rule 73.02(B)(2)(a) (D.S.C.).  The Magistrate Judge issued an R&R on January 5,

2021, recommending that the court affirm the 2019 ALJ Decision. ECF No. 29. Lollis

filed an objection to the R&R on January 29, 2021. ECF No. 30. On February 2, 2021,

the Commissioner replied. See ECF No. 31. As such, this matter is fully briefed and is

now ripe for the court's review.

### B. Medical History

The parties are familiar with Lollis's medical history, the facts of which are ably

recited by the R&Rs and decisions issued in Lollis I and Lollis II. Accordingly, the court

dispenses with a lengthy recitation thereof and instead briefly recounts those facts

material to its review of Lollis's objection to the R&R. Lollis was fifty-four years old at

the time of his alleged disability onset date, April 12, 2008. Lollis alleges that he suffers

from diabetes, chronic obstructive pulmonary disease, sleep apnea, arthritis, global

hypokinesis, and high blood pressure. Equipped with at least a high school education,

Lollis previously worked as a loom cleaner and mold injection operator.

### C. ALJ's Decision

The Social Security Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-

step sequential evaluation process to determine whether a claimant is disabled. See 20

C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the

claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe

impairment; (3) has an impairment which equals an impairment contained in 20 C.F.R.

§ 404, Subpt. P, App'x 1, which warrants a finding of disability without considering

vocational factors; (4) if not, whether the claimant has an impairment which prevents him

or her from performing past relevant work; and (5) if so, whether the claimant is able to

perform other work considering both his or her remaining physical and mental capacities

(together defined by his or her residual functional capacity) and his or her vocational

capabilities (age, education, and past work experience) to adjust to a new job.  See 20

C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264–65 (4th Cir. 1981).  The applicant

bears the burden of proof during the first four steps of the inquiry, while the burden shifts

to the Commissioner for the final step.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir.

1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).  "If an applicant's

claim fails at any step of the [sequential evaluation] process, the ALJ need not advance to

the subsequent steps."  Id. (citing Hunter, 993 F.2d at 35).

To determine whether Lollis was disabled from his alleged onset date of April 12,

2008 through June 30, 2008, the date last insured ("DLI"), ALJ Wilson employed the

statutorily required five-step evaluation process.  At step one, the ALJ found that Lollis

did not engage in substantial gainful activity between his alleged disability onset date and

his DLI.  Tr. 721.  At step two, the ALJ determined that Lollis suffered from severe

impairments, namely obesity, chronic obstructive pulmonary disease, degenerative disc

disease of the lumbar spine, obstructive sleep apnea, global hypokinesis, hypertension,

and coronary artery disease.  Id.  At step three, the ALJ concluded that none of the

preceding impairments, individually or combined, amounted to one of the impairments

enumerated in the Agency's Listing of Impairments.  Tr. 723.  Before reaching the fourth

step, the ALJ determined that Lollis retained the residual functional capacity to "perform

4

medium work as defined in 20 C.F.R. § 404.1567(c)." Tr. 724.  In computing Lollis's

residual functional capacity, the ALJ attributed "limited weight" to the opinion of Dr.

Wadee.  Tr. 730.  At the fourth step, the ALJ found Lollis "unable to perform any past

relevant work."  Tr. 732.  Reaching step five, the ALJ considered Lollis's "age,

education, work experience, and residual functional capacity" and determined that Lollis

could perform other work—for instance, as a counter supply worker, hand packer, or

store laborer—that exists in significant numbers in the national economy.  Tr. 733.

Therefore, the ALJ concluded that Lollis was not disabled within the meaning of the Act

during the period at issue.  Tr. 734.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the

Magistrate Judge's R&R to which specific, written objections are made.  28 U.S.C.

§ 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of

the Magistrate Judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).  The

recommendation of the Magistrate Judge carries no presumptive weight, and the

responsibility to make a final determination rests with this court.  Mathews v. Weber, 423

U.S. 261, 270–71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits

"is limited to determining whether the findings of the [Commissioner] are supported by

substantial evidence and whether the correct law was applied."  Hays v. Sullivan, 907

F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "more than a mere scintilla of

evidence but may be somewhat less than a preponderance."  Id.  (internal citations

omitted).  Put differently, substantial evidence means only "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted).

Although the district court's role is limited, "it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). Further, although the court will not reweigh the evidence considered, the Commissioner's findings of fact are not binding where they are based on an improper legal standard. Coffman v. Bowen, 829 F.2d 514, 519 (4th Cir. 1987).

### III.  DISCUSSION

Lollis lodges only one objection to the R&R. Lollis contends that the Magistrate Judge erred in concluding that the ALJ properly assigned "limited weight" to the opinion of Lollis's treating physician, Dr. Wadee. Dr. Wadee submitted three medical source statements regarding Lollis's functional limitations. In Dr. Wadee's view, Lollis's heart problems, chronic obstructive pulmonary disease, obesity, and deconditioning relegated Lollis to sedentary work at best, with various mental and physical limitations. Tr. 668. This court agrees with the Magistrate Judge that substantial evidence supports the ALJ's

6

allocation of limited weight to Dr. Wadee's opinions and therefore overrules the objection.

At the outset, the court rejects a procedural argument raised by the Commissioner. In response to Lollis's objection, the Commissioner asserts that Lollis failed to raise a "specific" objection to the R&R, complaining that the objections "merely repeat the same arguments that were fully considered and properly rejected by the magistrate judge . . . ." ECF No. 31 at 3. Basically, the Commissioner accuses Lollis of sneaking in a second bite of the apple. This court has previously considered and rejected such an argument. See Howard v. Saul, 408 F. Supp. 3d 721, 727 (D.S.C. 2019). In Howard, a Magistrate Judge recommended that the court uphold the Commissioner's decision denying DIB to the claimant. Id. at 724. The claimant's objected "to the Magistrate Judge's finding that the ALJ gave good reasons for rejecting the opinion of [the physician] stating that [the claimant] could not sustain full time work." Id. at 726. The Commissioner responded that the objection did not qualify as "specific" because it solely reiterated arguments already raised before and rejected by the Magistrate Judge. Id. The court was unpersuaded and held "[t]his is a specific objection to a particular finding of the R&R, based on a relevant point of law." Id. at 726–27. Here, Lollis disputes the Magistrate Judge's determination that the ALJ offered sufficient reasons for assigning limited weight to the opinion of Lollis's physician. See ECF No. 30. As in Howard, this objection is sufficiently "specific" to warrant this court's consideration.[3] As such, the court turns to Lollis's objection and the crux of the dispute: the treating physician rule.

---

[3] Despite the Commissioner's familiar argument, no law states that a party waives an argument once it is presented to and rejected by the Magistrate Judge. In fact, the

Under the "treating physician rule," the opinion of a claimant's treating physician is generally entitled to significant weight in the determination of disability.  See Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983).  In fact, the regulations demand that a medical opinion from a treating source be afforded "controlling weight" where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Craig, 76 F.3d at 590.  In such a circumstance, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."  Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

When an ALJ does not give the treating physician's opinion controlling weight, the ALJ must apply several factors to ascertain the appropriate weight to afford the opinion.  20 C.F.R. § 404.1527(c)(2).  Those factors are: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, that is, the extent to which it is consistent with medical signs and laboratory findings, (4) the opinion's consistency with the record, (5) whether the physician opines on matters within his or her specialty, and

---

opposite is true.  A district court "is not obligated to consider new arguments raised by a party for the first time in objections to the Magistrate's Report."  Dune v. G4s Regulated Sec. Sols., Inc., 2015 WL 799523, at *2 (D.S.C. Feb. 25, 2015) (collecting cases).  Precluding an objecting litigant from raising arguments that she has previously presented to the Magistrate Judge, while also precluding arguments that she has not presented to the Magistrate Judge, would leave that party with no arguments at all.

(6) other factors that tend to support or contradict the opinion. 20 C.F.R.

§ 404.1527(c)(2)(i)–(ii), (3)–(6); see Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir.

2005). "[A]n express discussion of each factor is not required as long as the ALJ

demonstrates that he applied the . . . factors and provides good reasons for his decision."

Hendrix v. Astrue, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010); see § 404.1527(c)(2)

(requiring ALJ to give "good reasons" for weight given to treating source's opinion). A

district court will not disturb an ALJ's determination as to the weight to be assigned to a

medical opinion, including the opinion of a treating physician, absent some indication

that the ALJ has dredged up "specious inconsistencies" or has not given good reason for

the weight afforded a particular opinion. Craft v. Apfel, 164 F.3d 624, 1998 WL 702296,

at *2 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal quotation

omitted). Evaluating Lollis's objection under the applicable standard of review, the court

must determine whether substantial evidence supports the ALJ's decision to afford

limited weight to Dr. Wadee's opinions.

This court agrees with the Magistrate Judge that the ALJ provided logically and

legally sufficient reasons for assigning limited weight to Dr. Wadee's opinion. While

acknowledging that Dr. Wadee had physically examined and treated Lollis, the ALJ

concluded that the record did not support the impairments of which Lollis complained.

Unlike in Lollis I and Lollis II, the ALJ thoroughly considered and discussed the record

in his decision, including the treatment notes of specialists who treated Lollis, Dr.

Wadee's own treatment records, and other substantial evidence of record.

To begin, the ALJ discounted Dr. Wadee's opinion because it conflicted with the

opinions of specialists. The ALJ observed that Dr. Wadee relied on Lollis's heart

condition and chronic obstructive pulmonary disease in determining Lollis's functional limitations. However, Dr. Wadee specializes in internal medicine—not cardiology or pulmonology. The ALJ found that Dr. Wadee's opinions were contradicted by the objective assessments of the pulmonologist, Dr. Gowdhami Mohan, and the cardiologist, Dr. Brent McLaurin, who also treated Lollis. Finding tension between these specialists' observations and Dr. Wadee's opinion, the ALJ deferred to the specialists.

Lollis argues that the treatment records of specialists do not, in fact, contradict Dr. Wadee's opinion because the specialists merely noted that Lollis's heart and lung conditions had stabilized; they did not refute the very existence of these conditions. The court is inclined to agree. Dr. Mohan, in examining Lollis in a sleep study in July 2008, described Lollis's symptoms from chronic obstructive pulmonary disease as "well controlled" with medications. Tr. 247. However, Dr. Mohan's observation that Lollis's condition was "well controlled" does not necessarily contradict Dr. Wadee's opinion regarding his limitations. See Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (explaining that "doing well" in treatment "has no necessary relation to a claimant's ability to work or to her work-related functional capacity"). Dr. Mohan also noted "distant breath sounds" in his observations but found that Lollis presented neither rales nor rhonchi. Id. The court fails to see how this observation is contrary to Dr. Wadee's opinion.

The court likewise is not satisfied that Dr. McLaurin's treatment records conflict with Dr. Wadee's opinion. Dr. McLaurin's discharge summary following Lollis's August 2008 heart procedure states:

> [Lollis] is a very pleasant 54-year-old Caucasian gentleman, who was having progressive dyspnea with exertion, becoming more severe with

10

activity.  He had significant risk factors as documented above, prompting further testing with noninvasive studies revealing normal perfusion imaging.    There was mild depression of the systolic function on echocardiogram.  Nevertheless, he was only able to walk 2 minutes on the Bruce protocol and stopped due to significant dyspnea.  Because of his continued symptoms and significant risk factors, he was brought in for further evaluation with a cardiac cath and found to have lesion as documented above . . . . He has been ambulatory without problems, and is now stable for discharge.

Tr. 266.  In his decision, the ALJ cherry-picks Dr. McLaurin's observations that Lollis

had "normal perfusion imaging," "mild depression of the systolic function,"  and was

able to walk for two minutes to frame Dr. McLaurin's observations as at odds with Dr.

Wadee's functional limitations.  Tr. 730.  However, the court rejects the ALJ's skewed

reading.  Dr. McLaurin commented on Lollis's "progressive dyspnea" that "becomes

more severe with activity," "continued symptoms and significant risk factors," and

documented a lesion that required a heart procedure.  Tr. 266.   Moreover, Dr. McLaurin

observed that Lollis was "only" able to walk for two minutes but had to stop "due to

significant dyspnea."  Id.  When read in its entirety, Dr. McLaurin's treatment record is

not inconsistent with Dr. Wadee's opinion.  Therefore, the evidence of specialist

observations, as cited by the ALJ, does not support the ALJ's decision to discount Dr.

Wadee's opinion.

Nevertheless, the ALJ cited other substantial evidence to support his evaluation of

Dr. Wadee's opinion.  The ALJ continued to explain that Dr. Wadee's opinion regarding

Lollis's functional limitations was inconsistent with his own treatment notes, Lollis's

testimony, and other medical records.  The ALJ recounted Lollis's visits with Dr. Wadee

beginning on April 22, 2008, after the alleged disability onset date, into the summer of

2009, after the DLI.[4]   See Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340–41

(4th Cir. 2012) ("Medical evaluations made after a claimant's insured status has expired .

. . may be relevant to prove a disability arising before the claimant's DLI" where "that

evidence permits an inference of linkage with the claimant's pre-DLI condition.").  In so

doing, the ALJ acknowledged that Dr. Wadee diagnosed Lollis with chronic obstructive

pulmonary disease and continually prescribed medication for the same.  Tr. 731.  The

ALJ also cited numerous examples where Dr. Wadee reported unremarkable

examinations and that Lollis had no complaints.  Tr. 731.  The ALJ specifically explained

how these findings and others were inconsistent with Dr. Wadee's medical source

statements.  For example, Dr. Wadee opined that Lollis's pain caused attention and

concentration issues.  However, the ALJ explained that such opinion is inconsistent with

Dr. Wadee's treatment records indicating that Lollis seldom had deficiencies in

concentration and hospital records where Lollis indicated "negative for back pain and

joint pain, no acute distress, no muscle pain, negative for [] joint swelling, arthralgias, or

calf pain."  Tr. 731.  The ALJ further noted that Dr. Wadee's opinion that Lollis needs

breaks to lay down because of fatigue is inconsistent with "records repeatedly noting no

---

[4] Lollis argues that ALJ Wilson, like his two predecessor ALJs, failed to fully
consider Dr. Wadee's treatment notes.  ECF No. 30 at 2–3.  In both Lollis I and Lollis II,
this court found that the ALJ's improperly considered "just one particular section of only
two records and did not take into account any of the other extensive medical information
contained in the doctor's records."  Lollis I, at *3; Lollis II, at *4.  Because it was not
clear in either case that the ALJ analyzed all evidence of record, the court reversed and
remanded the Commissioner's decision.  Lollis I, at *3 (citing Arnold v. Sec'y of Health,
Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)); Lollis II at *4.  Here, it is clear to the
court that ALJ Wilson took into account the entirety of Dr. Wadee's treatment records
and discussed the same in his decision.  As such, the ALJ in the instant action did not
commit the same errors that warranted reversal and remand of the Commissioner's
decision in Lollis I and Lollis II.

fatigue and no side effects from medications" and Lollis's testimony to the same effect.

Tr. 731. Dr. Wadee further opined that Lollis can never flex or rotate the cervical spine,

yet the ALJ cited numerous medical records indicating no neck stiffness and full range of

motion of the cervical spine. Id. Dr. Wadee additionally stated that Lollis had limitations

on lifting and needed to use a cane; however, the ALJ pointed to Dr. Wadee's contrary

records indicating that Lollis had no weakness in the extremities, normal range of motion

and gait, no musculoskeletal pain, no edema, and normal reflexes. Id. (citing Tr. 328).

Finally, the ALJ took issue with Dr. Wadee's imposed mental limitations as unsupported

by the evidence of record. The ALJ observed that Lollis did not indicate any mental

impairment or that he was taking medications for the same until 2018, after the DLI and

after Dr. Wadee provided his medical source statements. The ALJ likewise noted that the

medical evidence of record does not show any diagnosis or treatment for depression, and

treatment records indicate negative symptom reviews for mental impairments. The ALJ

further found Dr. Wadee's mental limitations at odds with the state agency psychological

consultant's determination that Lollis had no medically determinable mental impairment

and a laundry list of Lollis's activities that suggest normal mental status.

Based on the foregoing, the court finds that the ALJ had "good reasons" for his

assignment of limited weight to Dr. Wadee's opinion. To be sure, the record also

contains evidence that is consistent with Dr. Wadee's opinion; however the court's role is

merely to determine whether the ALJ's determination "is supported by substantial

evidence," which does not contemplate "reweigh[ing] conflicting evidence" or

"substitute[ing] our judgment for that of the [ALJ]." Johnson, 434 F.3d at 653. Because

the court finds that the ALJ's evaluation of Dr. Wadee's opinion is based upon a correct

13

application of the law and is supported by substantial evidence, the court overrules

Lollis's objection, adopts the R&R, and affirms the decision of the Commissioner.

## IV.  CONCLUSION

Based on the foregoing, the court **ADOPTS** the R&R and **AFFIRMS** the

Commissioner's decision.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 26, 2021**
**Charleston, South Carolina**